IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OHIO A. PHILIP RANDOLPH INSTITUTE and NORTHEAST OHIO COALITION FOR THE HOMELESS,**<br>     Plaintiffs,<br><br>     v.<br><br>**JON HUSTED,**<br>*in his official capacity as Ohio Secretary of State*,<br><br><br><br>     Defendant. | CIVIL ACTION NO. 2:16-cv-303 |

# COMPLAINT

Plaintiffs, by and through their undersigned counsel, for their complaint against Defendant, allege as follows:

1.  This action concerns the widespread and ongoing removal of eligible voters from the State of Ohio's voter-registration rolls, as a result of those voters' decisions not to participate in recent elections. The Defendant's actions violate the roll-maintenance provisions of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C.A. § 20501 *et seq.*, and have caused, and continue to cause, eligible Ohio citizens to be deprived of the fundamental right to vote. As a result of these violations, numerous Ohioans have been disenfranchised in recent elections, and many more face the threat of disenfranchisement in the 2016 Presidential Election and future elections.

2. In 1993, Congress passed the NVRA in part "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" while "ensur[ing] that accurate and current voter registration rolls are maintained." *Id.* § 20501(b)(1), (4).

3. Among other requirements, the NVRA requires states to "make[] a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant[.]" *Id.* § 20507(a)(4)(B). To realize the NVRA's defined purposes, however, Section 8 imposes strict requirements and limitations on states' list-maintenance procedures and activities. One such limitation is the near-categorical prohibition against removing voters for failure to vote. *Id.* § 20507(b)(2). The NVRA's restrictions reflect Congress' intent that "once a citizen is registered to vote, he or she should remain on the voting list so long as he or she remains eligible to vote in that jurisdiction." S. REP. NO. 103-6, at 17 (1993).

4. These restrictions also reflect a legislative finding that purging voters for infrequent voting "has a disparate impact on minority communities" and particularly burdens "poor and illiterate voters [who may be] caught in a purge system which will require them to needlessly re-register." *Id.* at 18.

5. Nevertheless, the State of Ohio, pursuant to what it calls the "Supplemental Process," routinely purges voters from its voter rolls *triggered solely by their failure to vote*. As a result of the Supplemental Process, Ohio voters have been and will continue to be unlawfully purged from the voter rolls and prevented from voting, in violation of federal law.

6. In the summer of 2015, Ohio conducted a massive statewide purge, removing many voters merely because they had not voted for a period of six years—meaning most of the purged voters last participated in the November 2008 Presidential Election, an election with significant get-out-the-vote efforts and in which a record number of electors turned out to vote in the state. Some of these purged voters learned for the first time that they were no longer registered when they went to vote in the November 2015 General Election, another election that, due to several significant statewide and local races, drew many infrequent voters. Despite remaining eligible to vote and residing at the same address at which they were previously registered, these voters were informed by election officials that their names were not on the voter rolls. Some, but not all, of these voters were offered a provisional ballot, which required them to devote additional time and energy completing an affidavit. On information and belief, after these voters made this additional and unnecessary effort, their provisional ballots were not counted. Nor, obviously, were the votes of those who were turned away without the opportunity to cast any ballot at all.

7. The Defendant's failure to comply with Section 8 of the NVRA deprives the people of Ohio of their right to vote, including the ability to *remain* registered so long as they remain eligible, and to participate in the democratic process.

## JURISDICTION AND VENUE

8. This action is brought pursuant to Section 11(b) of the NVRA. 52 U.S.C.A. § 20510(b).

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

10. This Court has personal jurisdiction over the Defendant because he is a citizen of the State of Ohio.

11. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and the Defendant conducts business in this district.

## PARTIES

12. Plaintiff OHIO A. PHILIP RANDOLPH INSTITUTE ("APRI") is a state chapter of the A. Philip Randolph Institute, a national organization for African-American trade unionists and community activists, established in 1965 to forge an alliance between the civil rights and labor movements. APRI is a senior constituency group of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"). It has ten chapters across Ohio, including in Columbus, Cleveland, and Cincinnati, and has members throughout the state. While APRI devotes considerable time and resources to efforts supporting charitable ventures, such as feeding the hungry and providing clothing to those in need, the bulk of APRI's work is focused on voter education, registration, and outreach efforts.

13. Among its recent voter-registration activities, APRI has participated in door-to-door canvassing, been present at community events, and placed phone calls to unregistered voters. APRI's voter-registration efforts focus on underserved communities and geographies where a high number of unregistered individuals reside.

4

14. As a direct result of Defendant's use of the Supplemental Process, APRI has had to divert time and resources to voter-registration efforts, including re-registering voters who were erroneously or unlawfully removed, instead of directing those resources toward their voter education efforts and other activities. In addition, APRI's members are at risk of being purged for failing to vote as a result of the Supplemental Process or of having to respond to an unlawful and burdensome confirmation notice.

15. Plaintiff NORTHEAST OHIO COALITION FOR THE HOMELESS ("NEOCH") is a nonprofit charitable organization whose mission is to organize and empower homeless and at-risk men, women, and children in the city of Cleveland (located in Cuyahoga County). NEOCH has approximately four hundred members in and around the Cleveland area. NEOCH advances its mission through efforts aimed at ensuring that homeless and at-risk individuals have access to services, health screenings, and legal assistance; amplifying the voices of the homeless people of Cleveland at the state and national level; advancing policies that protect the rights of Cleveland's homeless population; and ensuring that every homeless person is provided the opportunity to register to vote and participate in the democratic process.

16. To that end, NEOCH has been actively involved in voter-registration activities since 1987. NEOCH conducted extensive voter-registration activities in advance of the 2008, 2010, 2012, and 2014 elections, and has coordinated transportation to the polls for homeless voters. In 2014, NEOCH also distributed blank voter registration cards to shelters, subsidized housing programs, and public housing buildings, in an effort to ensure a broad reach to eligible homeless voters.

17. The homeless voters NEOCH serves are particularly vulnerable to the harm caused by the Supplemental Process, despite not having moved. Because homeless and at-risk individuals often experience serious barriers in making it to the polls to vote, such individuals are more likely to be infrequent voters and, therefore, are more likely to be targeted by the Supplemental Process. Moreover, these individuals often have difficulty receiving mail reliably, including election-related mail such as confirmation notices.

18. As a direct result of Defendant's use of the Supplemental Process, NEOCH, its members, and the clients it serves have been harmed. NEOCH has had to divert time and resources to voter registration efforts, potentially registering voters who were previously registered and removed from the rolls, instead of directing those resources toward voter education efforts and other activities important to NEOCH's mission. NEOCH's members, many of whom have experienced homelessness, have been or are at risk of being purged for failing to vote as a result of the Supplemental Process or of having to respond to an unlawful and burdensome confirmation notice.

19. Defendant JON HUSTED is the Ohio Secretary of State. Pursuant to Ohio Rev. Code Ann. § 3501.04 (2015), Mr. Husted is the chief election officer in Ohio and is responsible for overseeing voter registration and election administration throughout the State, including in this Judicial District. In his official capacity, Mr. Husted oversees the conduct of local elections, the operation of voting sites, and the coordination of Ohio's responsibilities under the NVRA, including overseeing the maintenance of voter registration lists. *Id.* § 3501.05(Q). As part of his roll-maintenance responsibilities,

Mr. Husted is tasked with adopting rules for removing ineligible voters, and for ensuring that eligible voters can register to vote and remain registered. *Id.* He is also responsible for ensuring compliance with Section 8 of the NVRA by Ohio's local boards of elections. *See* 52 U.S.C.A. § 20509; *see also* Ohio Rev. Code Ann. § 3501.05 (2015).

## FACTUAL BACKGROUND

### Ohio's Roll-Maintenance Procedure Removes Voters for Failing to Vote

20. Ohio's counties conduct roll maintenance pursuant to both state law and directives issued by the Secretary of State's office. *See* Ohio Rev. Code Ann. §§ 3501.05(Q), 3503.21. Ohio law requires the Secretary of State to adopt "[a] process for the removal of voters who have changed residence," which must include a program that uses information from the U.S. Postal Service's National Change of Address ("NCOA") program and may include other removal programs. *Id.* § 3501.05(Q)(1).

21. Pursuant to state law, the Secretary of State has created a roll-maintenance program with two distinct tracks for removing voters: the "NCOA Process" and the "Supplemental Process."

22. Under the NCOA Process, Ohio sends a "confirmation notice" (formally, "SOS Form 10-S") to any individual who has provided change-of-address information to the United States Postal Service, through the NCOA program. Under the Supplemental Process, Ohio sends the confirmation notice to each voter who does not vote for a two-year period—a period encompassing only a single federal election cycle.

23. SOS Form 10-S instructs the voter that she must complete and return a form confirming her address, even if the voter has not moved.

7

24.     Under both the NCOA Process and the Supplemental Process, if a voter does not respond to the confirmation notice within thirty days, the voter is designated "inactive."

25.     If such an inactive voter does not vote or otherwise communicate with the board of elections in the four-year period following the sending of the notice, that voter's registration is cancelled.  Once cancelled, the voter must re-register to participate in a subsequent election.

26.     Using NCOA change-of-address information, as Ohio does with its NCOA Process, is sufficient to satisfy Ohio's obligations under the NVRA's roll-maintenance requirements for removing individuals whose addresses have changed.[1] The Supplemental Process is not in any way necessary for the state to comply with the NVRA or state law. To the contrary, the Supplemental Process violates the NVRA.

27.     On information and belief, Ohio sends confirmation notices to more than one million Ohio voters each year, the vast majority under the Supplemental Process.  In 2015, for example, Cuyahoga County alone sent 178,078 confirmation notices under the Supplemental Process, more than six times the number of confirmation notices sent under the NCOA Process.  Similarly, Franklin County sent a total of 192,861 notices under the Supplemental Process in 2015, out of a total 214,317 confirmation notices sent.

---

[1] Insofar as it results in the removal of voters who moved within the same Ohio county, the NCOA Process does not comply with the NVRA.  At the time of filing this Complaint, Plaintiffs have provided the Ohio Secretary of State with notice of this violation, and, if it is not corrected within the required notice period, Plaintiffs intend to seek leave to amend the Complaint to add an additional cause of action on this issue.  In addition, as noted below in paragraphs 28–35, the confirmation notice used in the NCOA Process does not comply with the NVRA.

28. Designating voters who do not respond to the notice "inactive" has a number of collateral consequences. Under Ohio law, inactive voters are not counted for crucial election-administration decisions, such as the number of ballots to be printed, Ohio Rev. Code § 3505.11(A), or the number of voters assigned to a precinct or polling place. *Id.* § 3501.18(A). Because Ohio uses a short period of inactivity to trigger the confirmation notices and the "inactive" designation, the number of voters counted for these important decisions, in years with significant elections, is likely to dramatically understate the number of voters who will actually seek to participate in the election. On information and belief, this has led and will continue in the future to lead to many of the election-day problems Ohio has become known for over the years, such as long lines and high numbers of provisional ballots cast.

### **Ohio's Confirmation Notice (SOS Form 10-S) is Burdensome and Misleading**

29. As noted above, voters who are identified through either the NCOA Process or the Supplemental Process are sent a confirmation notice.

30. Section 8 of the NVRA requires that such a confirmation of address notice be sent to each registered voter identified through a reliable source of change-of-address information such as NCOA data from the United States Postal Service. The law requires certain information to be included on the notice, such as a date by which the notice must be returned and instructions as to how a person who has moved outside the county can re-register to vote. 52 U.S.C.A. § 20507(d)(2).

31. Ohio's confirmation notice is flawed in a number of ways.

9

32. First, Ohio's confirmation notice is in effect a new voter-registration application. That is, the confirmation notice requires voters who are already registered and have not moved to provide almost all of the same information that was required when they originally registered to vote, and recipients are instructed to fill out the form in its entirety. The form also requires voters to provide proof of identity to remain registered, a requirement which is not authorized by the NVRA or Ohio law, even for original voter registrations.

33. Second, the form fails to inform all voters who receive it how they can re-register at their new residence.

34. Third, the form's instructions are confusing. On one part of the form, voters are instructed, in small print, to complete and return the form to "confirm their address." On another part of the form, in large, bold print, the instructions explain how a voter can "update" her address if the voter has moved. Voters are informed that they may update their information by returning the form or visiting a website operated by the Secretary of State. The website only allows voters to report a change of address; voters cannot confirm an existing address.

35. Fourth, the form is vague and misleading, in that it states that if the recipient does not return the card and does not vote in the subsequent four-year period, his or her voter registration "*may* be cancelled." Nowhere on the confirmation notice are individuals informed that failure to return the card, vote, or otherwise affirmatively engage with the local board of elections *will* result in their removal from the registration roll.

36. Finally, the form does not provide a clear deadline by which the individual must return the card or take action to avoid being made "inactive" or ultimately removed from the rolls. Instead, it tells voters only that they must take "immediate action," a vague instruction that does not notify voters that the card must be returned by Ohio's registration deadline, 30 days before the election. This leads some voters who received the notice under the NCOA Process to miss the deadline for re-registration, and it leads others to give up on returning the card at all if they are unable to act on it "immediately."

**The Supplemental Process Resulted in a Massive Purge of Voters in 2015**

37. In the summer of 2015, Ohio conducted a statewide purge of voters, pursuant to Directive 2011-15. That Directive, issued in 2011, instructed election officials to send confirmation notices to voters who did not vote between March 1, 2009, and May 4, 2011, and who "did not engage in any voter activity or otherwise communicate with the board of elections" during that time. Thus, in the summer of 2011, Ohio's county elections boards sent notices to voters who last voted in 2008.

38. Pursuant to Directive 2011-15, voters who did not respond to those notices and did not vote in 2011, 2012, 2013, or 2014 were purged from Ohio's voter rolls in June and July 2015.[2]

39. In Cuyahoga County, for instance, approximately 40,000 voters were purged in 2015 pursuant to the Supplemental Process, with no indication that any of them had actually moved.

---

[2] Franklin County, Ohio did not conduct its purge until December 2015. Upon information and belief, it is the only county in Ohio to have conducted its purges after the 2015 local election.

40. Similar purges have been conducted in prior years under the Supplemental Process pursuant to prior list-maintenance directives.

41. These purges have had a tremendous impact on voters statewide and have resulted in the disenfranchisement of voters who had not moved or otherwise become ineligible—voters whom Section 8 of the NVRA was specifically designed to protect. On information and belief, the Supplemental Process disproportionately burdens people of color and low-income voters, including homeless individuals.  In Cuyahoga County, for example, the purged voters disproportionately reside in communities of color and low-income communities.

42. As a result of these purges, Ohio voters who had been removed from the rolls under the Supplemental Process last summer came to polling places to vote in November 2015, only to learn that their registration had been cancelled.  Those voters wishing to cast a ballot were forced to vote provisionally in the election.  Because according to Ohio law, these voters were not registered at the time of the election, their provisional ballots were not counted.

43. On information and belief, this problem will be much worse in the November 2016 General Election, when a much larger number of infrequent voters will likely return to the polls for the first time since 2008 and since the 2015 purges, only to find that they are no longer registered or able to participate in the election.

**Plaintiffs Notified Defendant of the NVRA Violations**

44. On December 17, 2015, Plaintiff APRI, through its counsel, sent a letter by certified mail and email to Defendant Husted, notifying him that the State of Ohio was

failing to meet its obligations under Section 8 of the NVRA. On February 23, 2016, Plaintiff NEOCH, through its counsel, sent an additional letter by first-class mail and email to Defendant Husted through his counsel.

45. The December 2015 and February 2016 letters both stated that APRI and NEOCH were providing notice of their intent to sue for the violations of Section 8 of the NVRA described herein unless the violations were corrected within the notice period prescribed by the NVRA.

46. Upon information and belief, Defendant continues to use the Supplemental Process for maintaining voter rolls and has not taken the steps necessary to remedy the State's noncompliance with Section 8 of the NVRA or restore the unlawfully purged voters to the rolls.

**FIRST CAUSE OF ACTION**
**Unlawful Removal of Voters in Violation of Section 8 of the National Voter Registration Act of 1993**

47. Plaintiffs rely herein upon all the paragraphs of this Complaint.

48. As a consequence of Ohio's past and continuing use of the Supplemental Process, Defendant has violated and continues to violate Section 8 of the NVRA by removing voters based on a failure to vote and without following the procedures required by the NVRA for removing voters who have changed residence. 52 U.S.C.A. § 20507.

49. The failure of the Defendant to comply with Section 8 of the NVRA has harmed Plaintiffs' members and has injured and will continue to injure Plaintiffs because of the resources invested in voter registration, which have been diverted from other activities important to their missions. Remediation of these ongoing violations will

13

permit Plaintiffs to allocate their scarce resources to other important activities and will ensure that their members are not disenfranchised simply for not voting.

50. Plaintiffs are therefore aggrieved by the Defendant's past and continuing use of the Supplemental Process and have no adequate remedy at law. Declaratory and injunctive relief is required to remedy past and continuing violations of the NVRA and to ensure the Defendant's future compliance with the NVRA.

## SECOND CAUSE OF ACTION
## Improper Confirmation Notice in Violation of Section 8 of the National Voter Registration Act of 1993

51. Plaintiffs rely herein upon all the paragraphs of this Complaint.

52. As a consequence of its legally deficient confirmation notice, which does not provide a date by which voters must return the form or information about how to re-register if a voter has moved outside of the county or state (despite the statute's clear requirements that this information be included), and which requires information that is not authorized by federal law, Defendant has violated and continues to violate Section 8 of the NVRA. 52 U.S.C.A. § 20507(d)(2).

53. The failure of the Defendant to comply with Section 8 of the NVRA has harmed Plaintiffs' members and has injured and will continue to injure the Plaintiffs because of the additional resources invested in voter registration and properly educating Ohioans who have not voted since 2008 that they have likely been purged. Remediation of these ongoing violations will permit the Plaintiffs to allocate their scarce resources to their other important activities and will ensure their members are not disenfranchised pursuant to an unlawful roll-maintenance procedure.

54. Plaintiffs are aggrieved by the Defendant's past and continuing violations of the NVRA through its use of SOS Form 10-S and have no adequate remedy at law. Declaratory and injunctive relief is required to remedy past and continuing violations of the NVRA and to ensure the Defendant's future compliance with the NVRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(i) Declare that the Defendant has violated Section 8 of the NVRA, 52 U.S.C.A. § 20507, by employing a list-maintenance process that results in the removal of voters for failing to vote after being sent an address-confirmation notice where the notice was sent because of a failure to vote in a prior time period;

(ii) Issue a temporary restraining order requiring the Defendant, his officers, agents, employees, and successors in office, and all persons in active concert or participation with him, to cease and desist from using the Supplemental Process or any similar process that results in the removal of voters for failure to vote in violation of Section 8 of the NVRA, 52 U.S.C.A. § 20507;

(iii) Issue a preliminary and permanent injunction:

(a) ordering the Defendant, his officers, agents, employees, and successors in office, and all persons in active concert or participation with him, under a court-approved plan with appropriate mandatory reporting and monitoring requirements, to cease and desist from using the Supplemental Process or any similar process that results in the removal of voters for failure to vote in violation of Section 8 of the NVRA, 52 U.S.C.A. § 20507;

(b) directing the Defendant to restore to Ohio's voter-registration list all voters who were unlawfully purged pursuant to the Supplemental Process; and

(c) directing the Defendant to adopt a new Form 10-S that complies with the requirements of the NVRA.

(iv)     Award Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action, pursuant to 52 U.S.C.A. § 20510(c);

(v)     Retain jurisdiction over this action to ensure that Defendant complies with any order(s) issued by this Court and with his obligations under the NVRA; and

(vi)     Grant such additional relief as to this Court seems just and proper.

Dated: April 6, 2016                                        Respectfully submitted,

                                                                          s/ Naila Awan

Daniel P. Tokaji*                                           Naila Awan, Trial Attorney (0088147)
Cooperating Attorney for ACLU of Ohio                       Stuart C. Naifeh*
The Ohio State University                                   Cameron Bell*
Moritz College of Law**                                     Dēmos
55 W. 12th Ave                                              220 Fifth Ave., 2nd Flr.
Columbus, OH 43210                                          New York, NY 10001
Telephone: 310-266-0402                                     Telephone: 212-485-6055
Email: dtokaji@gmail.com                                    Email: nawan@demos.org
                                                            Email: snaifeh@demos.org

Richard Saphire (0017813)
Cooperating Attorney for ACLU of Ohio                       Freda J. Levenson (0045916)
University of Dayton School of Law**                        ACLU of Ohio
300 College Park                                            4506 Chester Avenue
Dayton, Ohio 45469                                          Cleveland, Ohio 44103
Telephone: 937-229-2820                                     Telephone: 216-472-2220
Email: rsaphire1@udayton.edu                                Email: flevenson@acluohio.org

Paul Moke (0014099)
Cooperating Attorney for ACLU of Ohio
Wilmington College**
1252 Pyle Center
Wilmington, Ohio 45177
Telephone: 937-725-7501
Email: paul.moke@gmail.com


                                                                           *Counsel for Plaintiffs*
                                                                           _____

\* *Pro hac vice* motion pending
\*\* Institutional affiliation for the purpose of identification only