**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**OHIO A. PHILLIP RANDOLPH**
**INSTITUTE,** *et al.***,**

        **Plaintiffs,**

      **v.**                       **Case No. 2:16-cv-303**
                                    **JUDGE GEORGE C. SMITH**
                                    **Magistrate Judge Deavers**

**JON HUSTED,**
**OHIO SECRETARY OF STATE,**

        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Implement Remedy (Doc. 72) and Plaintiffs' Motion for Temporary Restraining Order and Motion for an Order to Show Cause (Doc. 74). The Court ordered expedited briefing on the Motions and they are now ripe for review.[1] After careful review of the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** both Defendant's Motion to Implement Remedy and Plaintiffs' Motion for Temporary Restraining Order.

**I.    BACKGROUND**

The Court has previously set forth the background in this case in detail in its June 29, 2016 Opinion and Order on the merits briefing. (*See* Doc. 66). At issue in this case is a challenge to Ohio's Supplemental Process, which has been used by Jon Husted, the Ohio Secretary of State ("Secretary Husted" or the "Secretary of State") as a supplement to the

---

[1] Amicus, the Ohio Democratic Party, and interested party, the United States, have both filed briefs regarding their opinions of the appropriate remedy in this case. The briefs suggest that the relief sought by the parties is not sufficient and the Court should reinstate all voters who have ever been removed pursuant to Ohio's Supplemental Process.

National Change of Address program ("NCOA"), targeting voters who changed addresses but failed to notify the United States Postal Service.  Plaintiffs challenged the Ohio Supplemental Process as a violation of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.  This Court held that the Ohio Supplemental Process did not violate the National Voter Registration Act.  (*See* Doc. 66, Opinion and Order).  However, the Sixth Circuit reversed and remanded this Court's decision, finding that the Ohio Supplemental Process is illegal under the NVRA.  *A. Philip Randolph Institute v. Jon Husted*, __ F.3d __, 2016 WL 5328160, at *8 (6th Cir. Sept. 23, 2016).

In an attempt to comply with the Sixth Circuit decision, the Secretary of State filed a Motion to Implement Remedy which includes a proposed Directive setting forth the process that Defendant believes reflects the remedy Plaintiffs sought in their Complaint and allows individuals removed from the registration roll through the 2015 Supplemental Process to vote assuming certain qualifications are met.  Plaintiffs have also moved this Court for a Second Temporary Restraining Order requesting the Court order the Secretary of State to issue a Directive to count all provisional ballots cast in the 2016 General Election by voters whose registrations were cancelled pursuant to Ohio's Supplemental Process in 2011, 2013, or 2015.  (Doc. 74, TRO at 2).  Plaintiffs also request immediate relief to ensure that absentee ballot requests by voters purged pursuant to Ohio's Supplemental Process are not rejected.

## II.    STANDARD OF REVIEW

Rule 65(b) of the Federal Rules of Civil Procedure permits a party to seek injunctive relief to prevent immediate and irreparable injury.  A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo.  *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996).  The burden of proving that the circumstances "clearly demand" such an extraordinary remedy is a heavy one: "[t]he party

seeking the injunction must establish its case by clear and convincing evidence." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998).

The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature. In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The factors are not prerequisites; rather, they must be balanced. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004); *see also Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative). The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982).

### III.    DISCUSSION

As set forth above, the Sixth Circuit held, without qualification, that "Ohio's Supplemental Process violates Section 8, subsection (b)(2) of the NVRA." *A. Philip Randolph Institute v. Jon Husted*, __ F.3d __, 2016 WL 5328160, at *8 (6th Cir. Sept. 23, 2016). Therefore, the Sixth Circuit remanded this case for further proceedings consistent with their opinion.

With the 2016 Election Day looming and early voting already underway, the Court finds itself in a difficult position. The Sixth Circuit's decision held that a process overseen for over 22 years by multiple Ohio Secretaries of State—from both major political parties—was unlawful.

Now, with fewer than 20 days until the election, this Court is faced with the task of crafting and ordering the implementation of a remedy that restores the rights of as many disenfranchised voters as possible without placing an undue burden on election officials, fundamentally changing the State's voting processes, or making room for abuse of those same processes. Given the time constraints and complexity of the logistical hurdles now faced by Secretary Husted and Ohio's 88 county boards of elections, it is unlikely that any remedy will be perfect. That being said, the parties agree on several key issues and the Court is confident that there are additional, manageable remedial measures that state and county officials can undertake prior to the election. Despite the imperfect circumstances now faced by the parties and Ohio voters purged under Ohio's Supplemental Process, it is the Court's hope that the remedies detailed in this Opinion and Order will successfully restore the rights of many Ohio voters prior to the upcoming election.

The Secretary of State has ended the Supplemental Process and therefore going forward, is no longer in violation of the NVRA. Despite arguing that the Eleventh Amendment bars an injunction against a state when there is no allegation of "an ongoing violation of federal law", the Secretary of State has still proposed a Directive that would allow unlawfully purged voters to vote in the 2016 General Election. (Doc. 80, Def.'s Mem. Opp. at 6, (citing *Deuel v. Dalton*, No. 3:11-cv-466, 2012 WL 1155208, *6 (M.D. Tenn. Apr. 4, 2012))). The Eleventh Amendment does not bar the relief sought in this case. Although Secretary Husted has stopped using the Ohio Supplemental Process going forward, the Sixth Circuit determined that the past use of the Ohio Supplemental Process was unlawful and that some qualified electors were illegally removed from the voter rolls. If those who were unlawfully removed from the voter rolls are not allowed to vote, then the Secretary of State is continuing to to disenfranchise voters in violation

of federal law. Under *Ex Parte Young*, the Court has the power to design a remedy that ends continuing violations of federal law in cases such as this. *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). Accordingly, at this stage, the Court finds that the Eleventh Amendment does not bar the relief sought in the TRO.

The parties agree that Plaintiffs have succeeded on the merits of their NVRA claim and that voters were unlawfully removed from Ohio's voter registration rolls pursuant to Ohio's Supplemental Process, justifying the need for injunctive relief. Both parties have submitted their proposed remedies agreeing that immediate relief is required to ensure that voters who were unlawfully removed are permitted to vote in the 2016 General Election because voting is already underway; however, they disagree as to the scope of the relief.

There is no dispute that the remedy ordered by this Court will not involve the reinstatement of all voters who have been removed from the voter registration rolls.[2] But it will allow voters who have been illegally removed to cast a provisional ballot and the Court will set forth the procedure for validating and counting those provisional ballots. The following issues remain in dispute and will be addressed in turn.

A.      **Confirming Voters Removed from Ohio's Supplemental Process**

The Secretary of State proposes the following relief:

For purposes of the November 8, 2016 General Election . . . a provisional ballot cast during the in-person absentee voting period or on Election Day by a voter who is not registered to vote in the State of Ohio may be counted if all of the following apply:

---

[2] The Ohio Democratic Party and the United States are seeking this exact relief. However, such broad reinstatement has not been requested as relief in this case and would be difficult to accomplish prior to the 2016 General Election, especially since early voting is already underway. Rather, the better way to ensure that any unlawfully removed voters are able to vote is to allow them to cast a provisional ballot that can be validated up to 30 days after the election.

1. The individual's voter registration was cancelled in 2015 (confirmation card mailed in 2011) pursuant to the Supplemental Process;

2. The voter's provisional ballot affirmation reflects the same address at which the voter was last registered to vote in the State of Ohio at the time of cancellation;

3. The board of elections does not have information that the voter was deceased, incarcerated on a felony conviction, or adjudicated incompetent under Ohio law by a county probate court after the individual's registration record was cancelled; and,

4. The voter's provisional ballot affirmation form and the ballot otherwise comply with all applicable laws and directives.

(Doc. 72-1, Proposed Directive).

Plaintiffs propose that all voters purged pursuant to Ohio's Supplemental Process in 2011, 2013, and 2015, should be counted if the other conditions apply.  Plaintiffs also provide more specific details with respect to condition three set forth above, which include:

the individual does not appear on a list of (i) deceased voters provided by the state department of health or by the State and Territorial Exchange of Vital Events ("STEVE") database, (ii) individuals incarcerated on a felony conviction provided by an Ohio clerk of court or a federal district court, or (iii) voters adjudicated as incompetent under Ohio law by a county probate court, where the relevant event (i.e., death, incarceration, adjudication of incompetence) occurred after the individual's registration record was cancelled;

(Doc. 74-1, Pls.' Proposed TRO at 5).

The Secretary of State responds that "Plaintiffs' demand would be burdensome and raises questions about reliability and uniformity."  (Doc. 80, Def.'s Mem. Opp. at 15).  Further, the Secretary of State submits declarations of election officials in support of his argument that some boards of elections' databases identify whether a name was removed from the registration roll under the Supplemental Process, while others do not.  (*Id.* (citing Damschroder Dec. at ¶ 29; Shubat Dec. at ¶ 10)).  For the boards of elections that do not have that capability, they can contact the Secretary of State who can compare the name against the state-wide NCOAs list from

6

previous years, and if not on that list, the presumption would be that the name was removed pursuant to the Supplemental Process. Then, other checks would need to be performed to ensure the person is not deceased, incarcerated on a felony conviction, or ruled incompetent.[3]

Additionally, the Secretary of State argues that the lists compiled prior to 2011 may be unreliable because they were prepared by previous administrations. Finally, the Secretary of State argues that extending the procedure of validating provisional ballots beyond those removed pursuant to Ohio's Supplemental Process in 2015,—*i.e.*, counting provisional ballots for those voters purged in 2013 and 2011—would create a risk of non-uniformity because some counties may be able to effectively verify which voters were removed in 2013 and 2011 while others may not.

The Court is concerned with the lack of reliable records in some of the county boards of elections. (*See* Doc. 80-7, Billing Decl. at ¶ 10 ("my county is not able to distinguish between individuals cancelled pursuant to the Supplemental Process and NCOA Process")). However, the alternative could possibly deny voters of their right to vote. The Court finds that the county boards of elections are already required to provide any individual who appears to vote and whose name does not appear on the voter registration rolls with a provisional ballot. Therefore, the county boards of elections are already required to determine whether each person casting a provisional ballot is qualified to vote. *See* Ohio Rev. Code § 3505.182. As part of this confirmation process, the county boards of elections will have an additional step of determining whether the person casting the provisional ballot was removed from the voter registration rolls

---

[3] The Secretary of State makes an important point, that "[e]ven those counties that can identify whether a name was removed through the Supplemental Process will still need to do those verifications…" Because "once a name is removed from the registration roll, in most counties, lists are not updated with subsequent events such as death." (Doc. 80, Def.'s Memo. in Opp. at 23 (citing Damschroder Dec. at ¶ 23; Shubat Dec. at ¶ 9)).

pursuant to the Supplemental Process of 2011, 2013, or 2015.  If the individual county boards of elections can confirm that the voter was removed pursuant to the Supplemental Process of 2011, 2013, or 2015, and the voter's information is the same as when he/she was purged or has moved within the same county as set forth below, then the provisional ballot must be counted, assuming the voter was not removed as deceased, incarcerated on a felony conviction, or ruled incompetent.

Therefore, the Court adopts the Secretary of State's proposed Directive with the following changes:  As to the APRI Exception on page 1, change the first paragraph to: "The individual's voter registration was cancelled in 2011, 2013, or 2015 pursuant to the Supplemental Process."  As to section d. of the Instructions on page 2, change the date of cancellation to 2011 and if date of cancellation is after January 1, 2011, proceed to "step e" below.  The Court finds that the Secretary of State's proposal for verification under the Statewide Voter Registration Database ("SWVRD") to determine whether a voter's registration has been cancelled if deceased, incarcerated, or incompetent is sufficient and it is not necessary to add the additional language proposed by Plaintiffs with respect to the STEVE database, etc.

The aforementioned findings apply to the scope of review of voters purged pursuant to the Supplemental Process.  The remaining disputed issues are set forth below.  Further, a final Temporary Restraining Order and Preliminary Injunction will be set forth in the conclusion of this Opinion and Order so as to avoid any confusion.

## B.    Absentee Ballot Requests

Plaintiffs argue that people who were unlawfully purged pursuant to Ohio's Supplemental Process may have mailed in absentee ballot requests.  And, because Ohio does not send unregistered voters absentee ballots, these people will be deprived of their right to vote by

mail-in absentee.  Plaintiffs request that the Secretary of State and the respective county boards of elections mail provisional ballots in response to an absentee ballot request from an unregistered voter.  Plaintiffs also ask the Court to order the Secretary of State to "add a column on its 'Provisional Supplemental Report' stating the number of individuals in each county who had [mail-in absentee] provisional ballots counted . . . ."  (Doc. 74-1, Pls.' Proposed TRO at 7).

The Secretary of State responds that Plaintiffs' requested relief is not narrowly tailored or easily administered.  The Secretary of State argues that sending a provisional ballot via the mail in response to an absentee ballot request from an unregistered voter has never occurred in Ohio and is contrary to Ohio law.  Ohio law provides for in-person provisional ballots pursuant to Ohio Revised Code sections 3505.18 through 3505.183.  There is a single, limited exception that allows for the mailing of a provisional ballot.  Under Ohio Revised Code section 3503.16(G), a voter may receive a mailed provisional ballot if they are entitled to cast a provisional ballot pursuant to other subsections, and that person is disabled or confined.

The Court finds that based on the information submitted by the Secretary of State, that allowing voters to request, receive, and submit a provisional mail-in absentee ballot would fundamentally change Ohio's election procedures.  Additionally, the Court finds that to impose such a remedy at this time would be unduly burdensome on the Secretary of State.  Specifically, Assistant Secretary of State Matthew W. Damschroder states in his declaration:

> Provisional ballot envelopes are generally 9 inches by 12 inches – much larger than a traditional absentee ballot identification envelope designed to fit inside of a "letter rate" return envelope.  As such, boards would not have on hand carrier envelopes intended to deliver the provisional envelope, a ballot, and a courtesy reply envelope large enough for the voter to enclose his or her provisional envelope.  Further, boards would need to immediately print additional provisional ballots and prepare instructions to include with the provisional ballot mailing to inform voters why they are receiving a provisional ballot by mail.  This provisional ballot mailing may be especially confusing to voters who have already received a notice of an absentee ballot deficiency from the county board of

elections.  After all, the early voting period has begun, and boards are processing absentee ballot applications.  While the Secretary issued a Directive on Friday pursuant to this Court's Order in the above-captioned case instructing county boards to not reject absentee ballot applications due to lack of voter registration, some notices regarding absentee ballot deficiencies likely were already issued.  Finally, the postage required of a voter to affix to the larger envelope in order to return a provisional ballot by mail would be significantly more than the cost to return an absentee ballot by mail.

(Doc. 80-1, Damschroder Decl. at ¶ 32).  The Court finds that sending provisional ballots by mail would be unduly burdensome on the Secretary of State.

Finally, courts have questioned and cautioned other courts in becoming involved in the minutiae of processes reserved for the states, such as the election process.  Specifically in *Ohio Democratic Party v. Husted*, No. 16-3561, slip op. at 2 (6th Cir. Aug. 23, 2016), the Sixth Circuit stated that this was yet another appeal "asking the federal courts to become entangled, as overseers and micromanagers, in the minutiae of state election processes."  In *Lewis v. Casey*, 518 U.S. 343, 362 (1996), the United States Supreme Court also questioned courts becoming "enmeshed in the minutiae" of state prison operations and suggested "adequate consideration to the views" of state officials.  Accordingly, the Court finds the state election officials' statements regarding sending provisional ballots by mail to be persuasive and **DENIES** such a remedy in this case.  Because the Court is not ordering the use of mail-in absentee provisional ballots, the Court **DENIES** Plaintiffs request to order the Secretary of State to alter the Provisional Supplemental Report to account for mail-in absentee provisional ballots.

Currently, pursuant to the Court's October 14, 2016 Order, the Secretary of State has issued Directive 2016-37 instructing all county boards of elections not to reject any absentee ballot applications, whether received by mail or in person until further instructions are provided by the Secretary of State.  However, according to the Secretary of State's responsive pleading, there are absentee ballot requests that have already been processed and denied.  There is no

practical way for Secretary Husted to remedy that.  However, as for the applications that have not been processed or were rejected, but not sent notifications to date, the Secretary of State shall include in the notification of denial to any nonregistered voters that they may be eligible to cast a provisional ballot during in-person absentee voting period at an appropriate early voting location or the county board of elections, or on Election Day at the correct polling place for the voter's current address.  This will ensure that all unregistered voters who requested an absentee ballot by mail will not be denied the opportunity to vote and can cast a provisional ballot early or on Election Day.

**C.     Change of Address within Same County**

Another point of contention between the parties centers around whether voters who were purged by the Supplemental Process must currently reside at the same address they did when they were unlawfully removed from the voter rolls in order for their in-person provisional ballot to be counted.  The Secretary of State proposes that provisional ballots should only be counted for previously purged voters who still reside at the same address they did when they were purged pursuant to the Supplemental Process.  (Doc. 72, Mot. to Impl. at 2; Doc. 72-1, Proposed Directive at 1).  Secretary Husted notes that this remedy mirrors what Plaintiffs previously requested.  Conversely, Plaintiffs request that purged voters' provisional ballots be counted even if they have moved residences within their county since the time they were purged from the voter rolls.  (Doc. 74-1, Pls.' Proposed TRO at 4–5).  Plaintiffs note that their earlier requests for a remedy similar to Secretary Husted's proposed remedy were premised on Secretary Husted's representations that there was no other way to identify the purged voters, but evidence has since come to light to nullify that position.  (Doc. 74, TRO Mot. at 3, n.1).

Ohio Revised Code § 3503.16 sets forth the requirements for voters who change residences or names.  In general, a voter must report a change of address regardless of whether they are moving intra-precinct, intra-county, or intra-state.  Ohio Rev. Code § 3503.16(A).  If a registered voter moves to a new residence within the same precinct in which he or she previously resided but fails to file a change of address form, they are not precluded from casting a regular ballot in person.  Said voters are still able to appear at their assigned polling location, complete and sign a notice of change of residence, provide one of the accepted forms of identification confirmation, and cast a regular ballot.  Ohio Rev. Code §§ 3503.16(A) and (B)(1)(a).

This scenario, of course, does not take into consideration that the voter may have been unlawfully purged in the interim.  In light of the current state of affairs, poll workers have no immediate way of cross-checking the voter's new address with their prior address if they have been purged from the voter rolls.  Recognizing this reality, Plaintiffs have requested that purged voters who move intra-precinct be treated the same as voters who move to a different precinct within the same county.  The Court agrees with Plaintiffs that equal treatment for all purged voters who moved within their county since their cancellation—regardless of whether they stayed in their same precinct—is the only workable solution.

Under Ohio law, a registered voter who moves to a new precinct within the same county is also not barred from casting a ballot simply because they failed to submit a change of address form.  Under these facts, a voter may cast a provisional ballot by appearing at an appropriate polling location for the precinct in which the person resides, completing and signing the written affirmation on the provisional ballot envelope (which serves as a notice of change of residence), and completing and signing a statement attesting that the registered elector moved and has voted a provisional ballot.  Ohio Rev. Code § 3503.16(B)(2)(a)–(d).  It is worth noting that the written

ballot affirmation ("Form No. 12-B"), as described in Ohio Revised Code § 3505.182, requests the same information and identification verification as the standard "Voter Registration and Information Update Form" that is widely available. Specifically, Form No. 12-B requires a provisional voter to provide their full name, date of birth, current address, former address (optional), and Ohio driver's license number, state identification card number, or the last four digits of their Social Security number. Form No. 12-B also requires a sworn affirmation and signature. In short, Form No. 12-B provides election officials with the same safeguards and information that a normal voter's registration form would include. Accordingly, by requiring election officials to tabulate these provisional ballots, the Court finds no undue burden on election officials nor does the Court find any increased risk for abuse of the voting process.

In light of the Sixth Circuit's holding that Secretary Husted—by way of the Supplemental Process—unlawfully removed voters from the state's voter rolls, the Court finds Secretary Husted's proposed remedy untenable. If the Court were to accept the position that provisional ballots need only be counted for voters who currently reside at the same address they did when they were purged, voters who have moved intra-precinct or intra-county would be denied rights that they would have enjoyed had they not been unlawfully purged under the Supplemental Process. In short, these voters should still be able to cast a provisional ballot and have it counted if they are able to comply with the additional requirements set forth in Ohio Revised Code § 3503.16 *et seq.*, despite the fact that they have moved residences.

As noted above in Section II.A., if a voter appears at her proper polling location and her name does not appear in the voter rolls, she may cast a provisional ballot. In the weeks following the election, her county board of elections will check their past voter rolls to determine if she was registered to vote in that county at the time of her cancellation. If so, the board shall

determine if she falls within the APRI Exception as set forth in Secretary Husted's proposed Directive 2016-XX (as modified by this Opinion and Order). If the board of elections does not have any information indicating that she was deceased, incarcerated on a felony conviction, or adjudicated incompetent, and it is determined that she not was lawfully purged from the voter rolls through the NCOA Process, there is a presumption that she was unlawfully purged pursuant to the Supplemental Process and her provisional ballot should be counted. If a board does not possess the information to determine whether she was purged under the NCOA Process or the Supplemental Process, then the board must contact the appropriate Secretary of State's elections counsel, which will then make a determination after checking past NCOA lists. With the information before it, the Court does not think this process places an undue burden on the county boards of elections or the Secretary of State. Accordingly, the Court hereby **ORDERS** that all such votes be counted provided there is no independent basis which otherwise would render those votes void. The Court also notes that there is a strong likelihood that voters not currently in the voter rolls have been lawfully removed as a result of the NCOA Process.

**D.      Additional Communications to Voters**

Plaintiffs have requested that this Court order the Secretary of State to communicate to prospective voters regarding the voters' ability to vote provisionally should the voter believe they are not registered to vote. The Secretary of State did not specifically address Plaintiffs' request for changes to the Secretary of State's website or the requests regarding telephonic and online assistance to voters. However, the Secretary of State objects to Plaintiffs' request that the Secretary of State take out advertising efforts to inform voters that they may vote provisionally. The Court will address each below.

1.     **Website Alterations**

Plaintiffs request that new language be added to the "MyOhioVote.com" and "http://voterlookup.sos.state.oh.us" webpages of the Secretary of State containing the online "Voter Lookup" tool.  Plaintiffs request that the following language be added:

> If you are unable to locate your voter registration information but think you are registered to vote, and you have not moved outside of your county of prior registration, you may be eligible to cast a provisional ballot either during in-person absentee voting period or at the correct polling place for your current address that may be counted pursuant to court order.  To find your polling place, please click here or call your county board of elections.

(Doc. 74-1, Pls.' Proposed TRO at 7).  Additionally, Plaintiffs' Proposed TRO calls for a hyperlink be placed on the words "pursuant to court order" and that "[t]he phrase 'click here' will be a hyperlink to the online [polling location locator] resource.  The phrase 'call your county board of elections' will be a hyperlink to a list of the phone numbers of all of Ohio's 88 county boards of elections." (*Id.*).  Last, Plaintiffs request that the Secretary of State "direct each county that operates its own online voter lookup tool to add the language described above, including the hyperlinks, to the webpage containing that tool." (*Id.*).

The voter lookup tool currently presents the following statement when a search query returns no results:

> We could not locate your voter registration with the information you provided. Please double check your entries below. If you have entered the correct information in the correct fields, we encourage you to check your registration status by contacting your local county board of elections. Click here for a full listing of Boards of Elections.

Voter Search, *My Voter Information*, Ohio Secretary of State, http://voterlookup.sos.state.oh.us/voterlookup.aspx (last visited October 18, 2016).  The Court finds that a remedy similar to that suggested by the Plaintiffs is not unduly burdensome on the Secretary of State and will properly assist voters with finding the proper polling place and casting a provisional ballot if

their registration was cancelled.  Further, the Court agrees with Plaintiffs that if a county operates a voter lookup tool, the county should offer some directions to a voter who believes they are registered but receives no results in response to a query.  However, the Court also recognizes the reality that all counties who operate a voter lookup tool may not have the staffing or time necessary to make the changes requested by Plaintiffs.

Accordingly, the Secretary of State is **ORDERED** to change the language in the voter lookup tools "MyOhioVote.com" and "http://voterlookup.sos.state.oh.us" webpages of the Secretary of State to the following when the tool fails to pull up a voter's registration:

> We could not locate your voter registration with the information you provided. Please double check your entries below.  If you are unable to locate your voter registration information but think you are registered to vote and you have not moved outside of your county of prior registration, you may be eligible to cast a provisional ballot during in-person absentee voting period at an appropriate early voting location or the county board of elections, or on Election Day at the correct polling place for your current address that may be counted.  We encourage you to check your registration status by contacting your local county board of elections. To find your polling place, please click here or call your county board of elections.  Click here for a full listing of Boards of Elections.

(Doc. 74-1, Pls.' Proposed TRO at 8).  The phrase "please click here" will be a hyperlink to the online "Voter Toolkit" which contains an option for "Find My Polling Location." *Voter Toolkit*, Secretary of State, https://www.sos.state.oh.us/SOS/Upload/sites/ballotTracking/ballotTracking .aspx?page=20547 (last visited October 18, 2016).  The phrase "Click here for a full listing of Boards of Elections" will continue to be a hyperlink to a list of the contact information of all of Ohio's 88 county boards of elections.  The Secretary of State shall also add the following phrase to all result pages in the voter lookup tool in the event that the tool provides other properly registered voters but not the voter who conducted the search:

> If you are unable to locate your voter registration information but think you are registered to vote and you have not moved outside of your county of prior registration, you may be eligible to cast a provisional ballot during in-person absentee voting period at an appropriate early voting location or the county board

of elections, or on Election Day at the correct polling place for your current address that may be counted. We encourage you to check your registration status by contacting your local county board of elections. To find your polling place, please click here or call your county board of elections. Click here for a full listing of Boards of Elections.

This notice shall have the same hyperlinks as the notice above.

The Secretary of State will also direct all counties which operate their own voter lookup tools to add the language and hyperlinks noted above to the extent possible given the noted time and staffing constraints. Last the Court **DENIES** Plaintiffs' request to require the Secretary of State to "continue to provide online and telephonic resources in response to voter inquiries to assist voters in determining the correct polling location and precinct for their address." As Plaintiffs admit that this is already occurring, there is no need for such an order.

### 2.    Advertising and Promotion Efforts

Plaintiffs' final request is that the Court orders Secretary Husted to:

undertake additional efforts to inform and educate the public concerning how voters whose registrations were cancelled under the Supplemental Process may participate in the November 2016 General Election, including making public service announcements via television, radio, and social media, and posting information on the Secretary's web site.

(Doc. 74-1, Pls.' Proposed TRO at 8). The Secretary of State asserts that this would be impracticable due to time constraints, costs, and the requirements with which the Secretary of State must comply to purchase advertising, to employ advertising firms and those necessary to produce such advertisements. Secretary Husted notes that the Controlling Board would have to approve the costs at a meeting for which the application deadline has already passed and that an advertising buy in September cost approximately $550,000.

The Court agrees with the Secretary of State that the requested relief is impracticable in the time that is currently remaining before the election. Plaintiffs' motion and Proposed Temporary Restraining Order offer no justification for the necessity of this relief or how the

relief requested is narrowly tailored to the address the harm in this case. As Plaintiffs have noted in earlier motions before the Court, the primary concern is that "many cancelled voters will show up to vote in the November 2016 General Election, only to be told they are unregistered and therefore unable to vote." (Doc. 9, Mot. Prelim. Inj. at 21; *see also* Doc. 9-4, Harmon Decl. at ¶ 8 (found out he was not registered upon arrival at the polling location); Doc. 9-5, McCullough Decl. at ¶ 11 (same)). Plaintiffs' proposed relief offers no benefit to the harm alleged. Voters who believe they are registered will show up on Election Day and be allowed to cast a provisional ballot under the relief granted. Accordingly, Plaintiffs' request for the Secretary of State to conduct an advertising campaign is **DENIED**.

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion to Implement Remedy and Plaintiffs' Second Motion for Temporary Restraining Order are **GRANTED IN PART** and **DENIED IN PART**. The Court finds that the aforementioned remedies are in accord with the Sixth Circuit's decision in *A. Philip Randolph Inst.*, 2016 WL 5328160 and the purposes of the NVRA, which include: "to protect the integrity of the electoral process;" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501.

The Secretary of State is hereby **ORDERED** to issue a directive no later than Friday, October 21, 2016 in a form substantially similar to the language below. The Court approves of any formatting changes deemed appropriate by the Secretary of State so long as they do not substantively alter the Court's approved language. The following Temporary Restraining Order and Preliminary Injunction shall remain in effect through the November 8, 2016 General Election and subsequent tabulation period:

**PURPOSE**

For purposes of the November 8, 2016 General Election, a provisional ballot cast during the in-person absentee voting period or on Election day by a voter who is not registered to vote in the State of Ohio may be counted if all of the following apply (the "*APRI* Exception"):

1. The individual's voter registration was cancelled in 2011, 2013, or 2015 (confirmation card mailed in 2007, 2009, or 2011) pursuant to the Supplemental Process;

2. The voter's provisional ballot affirmation reflects an address within that precinct and the voter was previously registered to vote within that same county prior to cancellation;

3. The board of elections does not have information that the voter was deceased, incarcerated on a felony conviction, or adjudicated as incompetent under Ohio law by a county probate court after the individual's registration record was cancelled; and,

4. The voter's provisional ballot affirmation form and the ballot otherwise comply with all applicable laws and directives.

**INSTRUCTIONS**

Boards must apply the *APRI* Exception to the provisional ballot eligibility determination of any provisional voter who is not registered to vote in the State of Ohio at least 30 days before the election. If the board determines, as evidenced by the voter having a "cancelled" status in the Statewide Voter Registration Database (SWVRD), that the voter previously was registered to vote in the State of Ohio, it must count the provisional ballot using the following steps in conjunction with the mandatory process for determining eligibility of provisional ballots in Chapter 6, Provisional Voting, of the Ohio Election Official Manual:

a. Identify the most recent address of registration in the Statewide Voter File for the voter (because merged records can result in multiple records for a single voter, it is necessary to identify the most recent address of registration on file prior to cancellation). Proceed to "step b" below.

b. If the most recent address of registration in the Statewide Voter File for the voter is in a different county than the address provided by the voter on the provisional affirmation, the board must reject the provisional ballot. If the most recent address of registration in the Statewide Voter File for the voter is the same as the address provided by the voter on the provisional affirmation or is in the same county, proceed to "step c" below.

c. Identify the "reason" code in the SWVRD. If the reason code is "Cancelled – Deceased," "Cancelled – Incompetent," or "Cancelled – Incarcerated" the board must reject the provisional ballot. (A "merged" record is not a "cancelled" record.) If the

reason code is something other than death, adjudication of incompetency by a probate judge, or incarceration on a felony conviction, proceed to "step d" below.

d.  Identify the date of cancellation in the SWVRD.  If the date of cancellation is prior to 2011, the board must reject the provisional ballot.  If the date of cancellation in the SWVRD is after January 1, 2011, proceed to "step e" below.

e.  Determine if the voter was cancelled under the "Supplemental Process" of the state's general voter records maintenance program.

**If the board's records do not differentiate between a cancellation under the "NCOA Process" and a cancellation under the "Supplemental Process," the board must contact the Secretary of State's elections counsel assigned to its county.** The Secretary of State's elections counsel will compare the information from the voter's provisional ballot affirmation to the NCOA list from the year in which the voter was sent a confirmation notice (four years prior to the year of cancellation).

The Secretary's Office shall possess the NCOA lists from 2007, 2009, and 2011. A county seeking to determine whether an individual is on the NCOA list in accordance with subsection (b) above shall contact the Secretary's Office, which shall provide the county with a prompt response.

The provisional ballot of a voter whose registration was cancelled under the "NCOA Process" cannot be counted under the *APRI* Exception.  If the voter's registration was cancelled under the "NCOA Process," the board must reject the provisional ballot.

The provisional ballot of a voter whose registration was cancelled under the "Supplemental Process" must be counted under the *APRI* Exception if the provisional ballot affirmation and the provisional ballot otherwise comply with all applicable laws, as directed in the mandatory process for determining eligibility of provisional ballots in Chapter 6, Provisional Voting, of the Ohio Election Official Manual.

## ADDITIONAL INSTRUCTIONS

- The board must provide ballots and envelopes in the quantity of at least 15 percent more than the number of provisional ballots cast in that precinct at the 2008 or 2012 Presidential General Election, whichever is higher.[4]  Additionally, each board must provide to each precinct and/or polling location a stock of provisional ballot affirmation envelopes (containing Secretary of State Form 12-B) that is greater than the number of provisional ballots being provided for this election. Be mindful of the proper allocation of

---

[4] This is a minimum requirement for preparedness, not a prediction for the number of provisional ballots expected to be cast this election or as a result of the APRI Exception.

ballot and envelope quantities across precinct splits. Additionally, any multi-precinct polling location must have a sufficient supply of Secretary of State Form 12-D.[5]

- Boards of elections will be required to provide the total count of provisional ballots counted using the APRI Exception separate from all other counted provisional ballots when the board submits its supplemental report at the conclusion of the official canvass following Election Day.

- Boards of elections are required to add the following language to any web tool used to aid voters in searching for their registration information:

  o If you are unable to locate your voter registration information but think you are registered to vote and you have not moved outside of your county of prior registration, you may be eligible to cast a provisional ballot during in-person absentee voting period at an appropriate early voting location or the county board of elections, or on Election Day at the correct polling place for your current address that may be counted.  We encourage you to check your registration status by contacting your local county board of elections.  To find your polling place, please click here or call your county board of elections.  Click here for a full listing of Boards of Elections.

- With respect to absentee ballot request forms, submitted in person or by mail, that have not already been processed and/or rejected by the Secretary of State and the respective boards of elections, the following language shall be included in the notification of denial of the request for absentee voter to any nonregistered voter:

  o You may still case a provisional ballot during in-person absentee voting period at an appropriate early voting location or the county board of elections, or on Election Day at the correct polling place for your current address.

---

[5] For all information relative to ballot quantities for the November 8, 2016 presidential general election, *see* Directive 2016-35.

Following the Court's Order permitting Defendant to file a reply brief, Plaintiffs filed a Motion to Withdraw their reply, which is **DENIED as moot**.  Additionally, the Ohio Democratic Party's Motion for Leave to file its Amicus Curiae Brief is **GRANTED**.  The Clerk of this Court shall remove Documents 72, 74, 78, and 86 from the Court's pending motions list.  The parties shall submit a Joint Proposed Scheduling Order following the 2016 General Election regarding final merits briefing on the resolution of this case.

**IT IS SO ORDERED.**

_/s/ George C. Smith_
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**