# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**OHIO A. PHILLIP RANDOLPH
INSTITUTE,** *et al.***,**

          **Plaintiffs,**

      **v.**                          **Case No. 2:16-cv-303**
                                          **JUDGE GEORGE C. SMITH**
                                          **Magistrate Judge Deavers**

**JON HUSTED,
OHIO SECRETARY OF STATE,**

          **Defendant.**

## OPINION AND ORDER

      This matter is before the Court on the parties cross-motions for final judgment on the remaining claim in this case (Doc. 132 and 133).[1] Additionally, Plaintiffs submitted a Reply brief (Doc. 139). The parties have agreed to submit all remaining legal arguments and the requested relief sought in their merits brief for final adjudication of this matter. Additionally, Amicus Judicial Watch, Inc. and Amicus Public Interest Legal Foundation have filed amicus briefs in support of Defendant Jon Husted. (*See* Docs. 137 and 138). After careful review of the parties' arguments, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

## I. BACKGROUND

      Plaintiffs Ohio A. Philip Randolph Institute ("Randolph Institute"), the Northeast Ohio Coalition for the Homeless ("NEOCH"), and Larry Harmon (collectively "Plaintiffs") initiated this

---

[1] The parties have agreed that the remaining issue involves a question of law and have agreed to waive any oral presentation of evidence. However, some questions may arise with respect to the remedy, and if necessary, this Court will weigh any evidence and make findings similar to a bench trial, but on briefs.

case on April 6, 2016, seeking injunctive relief to prevent future removal of registered voters from the voter registration rolls pursuant to, *inter alia*, Ohio Secretary of State Directive 2015-15.[2] The last time any names were removed from the voter registration list pursuant to Ohio's Supplemental Process was in 2015. (Doc. 80-1, Damschroder Declaration at ¶ 21). Those individuals removed in 2015 failed to "respond to confirmation cards and failed to vote or engage in voter activity" or otherwise communicate with the board of elections, since March 1, 2009. (*Id.* at ¶ 21–22). The next scheduled Supplemental Process will be after the November 2018 election. (Doc. 133-3, Direction 2018-20).

One named individual Plaintiff, Larry Harmon, has resided at the same address in Portage County, Ohio for approximately 15 years. Mr. Harmon voted in the 2004 and 2008 Presidential elections, but did not vote, or engage in any voter activity, from 2009 through 2015. In November 2015, Mr. Harmon went to the polls on Election Day to vote, but was told that his name did not appear in the poll book of registered voters. In fact, Mr. Harmon had been removed from the Portage County voter registration rolls pursuant to Ohio's current practices and procedures for maintaining accurate voter rolls. Mr. Harmon does not recall receiving a confirmation notice to confirm his voter registration.

Defendant Ohio Secretary of State, Jon Husted ("Secretary Husted") is Ohio's chief election officer and is charged with management of voter registration and election administration throughout the state. *See* Ohio Rev. Code § 3501.04. Ohio law requires the Secretary of State to adopt "[a] process for the removal of voters who have changed residence," which is required to use information from the U.S. Postal Service's National Change of Address program (the "Ohio NCOA Process"). Ohio Rev. Code §§ 3501.05(Q); 3503.21. In addition to the Ohio NCOA

---

[2] The full factual background of this case is set forth in detail in this Court's previous Opinions and Orders and will only be summarized for purposes of this Opinion and Order. (*See* Docs. 66 and 89).

Process, Ohio also uses a supplemental process to combat voter roll inaccuracies brought about by the frequent occurrence of voters changing addresses without notifying the United States Postal Service (the "Ohio Supplemental Process"). The difference between the two processes is how a voter is identified to receive a confirmation notice. Under the Ohio NCOA Process, the United States Postal Service's program indicates that a voter has a forwarding address on file. Under the Ohio Supplemental Process, a voter is notified following a two-year period of non-voting.

Once a voter is identified under either process, a confirmation notice is sent to the voter by forwardable mail with a postage pre-paid return envelope. (Doc. 38-2, Damschroder Decl., ¶ 14). An individual who receives a confirmation notice and needs to update his or her address may do so using the State's online change of address system. (*Id.* at ¶ 19). Secretary Husted implemented this online change of address system in 2012. (*Id.*). An individual receiving a confirmation notice may also return the postage pre-paid form free of cost through the mail. If the individual returns the confirmation notice and provides a new address, the individual's registration record is updated by the appropriate board of elections with the new address. (*Id.* at ¶ 20). If the individual returns the confirmation notice confirming that his or her current address is still accurate, the board notes on the individual's registration record that the confirmation notice was returned to the board and the address was confirmed. (*Id.*).

If an individual fails to return the confirmation notice, fails to update his or her voter registration, and fails to engage in any other voter activity, the individual will be marked as "inactive" in the registration database. (*Id.*). This "inactive" individual has all the rights of an otherwise qualified elector, including the ability to cast a regular ballot at any election. (*Id.*). If, however, four years (including two federal general elections) pass without voter activity, at that time, the individual's voter registration record is removed. (*Id.*).

Plaintiffs' first cause of action challenged the Ohio Supplemental Process as a violation of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., which establishes the requirements that states must follow to maintain their respective voter registration rolls.  52 U.S.C. § 20507.  Plaintiffs' second cause of action challenged the change of address confirmation notices mailed to voters as part of the Supplemental Process for failure to meet the standards for such forms set forth in the NVRA, 52 U.S.C. § 20507(d)(2).[3]

On June 29, 2016, this Court found that Ohio's Supplemental Process did not violate the NVRA and denied Plaintiffs' Motion for Summary Judgment and Permanent Injunction and entered judgment in favor of Defendant.  Also, with respect to Plaintiffs' challenge to the confirmation notice, this Court held that Plaintiffs' initial challenges to Ohio's confirmation notice were mooted by the adoption of a revised form that addressed all but one of Plaintiffs' concerns; and that the revised confirmation notice (Form 10-S) was in compliance with the NVRA.

On September 23, 2016, the United States Court of Appeals for the Sixth Circuit reversed this Court, holding that Ohio's Supplemental Process violates Section 8, subsection (b)(2) of the NVRA because it sends the confirmation notice "based 'solely' on a person's failure to vote."  *A. Phillip Randolph Inst., et al. v. Husted*, 838 F.3d 699, 712 (2016).  Additionally, with respect to the confirmation notice, the Sixth Circuit held that this Court erred by concluding that "Ohio need not provide out-of-state movers with information on how they can continue to be eligible to vote." *Id*. at 715.

Following remand from the Sixth Circuit and faced with the upcoming general election in November 2016, this Court granted in part and denied in part both Defendant's Motion to

---

[3]  Notably, during the briefing on the merits of this case, the Secretary of State issued a directive requiring all Ohio Boards of Elections to use a new version of the confirmation notice.  Plaintiffs agreed that the new confirmation notice corrected all but one of the deficiencies

Implement Remedy (Doc. 72) and Plaintiffs' Motion for Temporary Restraining Order (Doc. 74) on October 19, 2016.  (Doc. 89, Opinion and Order).  This Court recognized: "There is no dispute that the remedy ordered by this Court will not involve the reinstatement of all voters who have been removed from the voter registration rolls.  But it will allow voters who have been illegally removed to cast a provisional ballot and the Court will set forth the procedure for validating and counting those provisional ballots."  This Court further recognized that despite Plaintiffs seeking reinstatement of the purged voters, "such broad reinstatement has not been requested as relief in this case and would be difficult to accomplish prior to the 2016 General Election, especially since early voting is already underway.  Rather, the better way to ensure that any unlawfully removed voters are able to vote is to allow them to cast a provisional ballot that can be validated up to 30 days after the election."  (Doc. 89, Opinion and Order at 5).  The interim relief ordered (referred to as the "*APRI* Exception") is set forth in detail in this Court's October 19, 2016 Opinion and Order.[4]

Final resolution of the case schedule was stayed because the United States Supreme Court granted Defendant's Petition for a Writ of Certiorari on May 30, 2017.  (*See* Docs. 118 and 119). Defendant only sought review on the first cause of action.  The United States Supreme Court issued a decision on June 11, 2018, reversing the Sixth Circuit and holding that Ohio's Supplemental Process does not violate the NVRA.  *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833, 1848 (2018).  The Supreme Court held that "Ohio's Supplemental Process follows subsection (d) to the

---

[4] It is important to note, that during the pendency of this lawsuit, not only has Secretary Husted not executed the Supplemental Process and removed any registered voters, but he has allowed any removed voters to vote via a provisional ballot, subject to confirmation of address.  During the elections where this "APRI Exception" was in place, a total of 7,798 voters voted via a provisional ballot pursuant to this process.  All of these voters who took advantage of this opportunity to vote although their name had been removed from the voter registration rolls, were placed back on the registration roll.  (Doc. 133-4, Damschroder Decl. ¶¶ 14–20).

letter.  It is undisputed that Ohio does not remove a registrant on change-of-residence ground unless the registrant is sent and fails to mail back a return card and then fails to vote for an additional four years." *Id*. at 1842.

## II.    STANDARD OF REVIEW

The parties are seeking final judgment and a permanent injunction on the remaining issue in this case, Plaintiff's second cause of action.  The "standard for granting a permanent injunction is essentially the same as the standard for a preliminary injunction." *United States v. Miami Univ.*, 91 F. Supp. 2d 1132, 1147 (S.D. Ohio 2000) (Smith, J.).  However, when a plaintiff seeks a permanent injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success on the merits. *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell, AK,* 480 U.S. 531, 546, n. 12 (1987)).

In the Sixth Circuit, "[a] plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and that it is in the public's interest to issue the injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (quoting *eBay Inc., et al. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006)).  The decision whether or not to issue injunctive relief falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982).  Moreover, Plaintiffs must establish their case by clear and convincing evidence. *Damon's Rests., Inc. v. Eileen K. Inc.*, 461 F. Supp.2d 607, 621 (S.D. Ohio Aug. 30, 2006) (King, M.J.).  To meet this burden, the movant's evidence "must more than outweigh the [opposing] evidence," but must also "persuade the court that its claims are highly probable." *Id*.

## III. DISCUSSION

The only remaining issue pending before the Court is Plaintiffs' Second Cause of Action of the Amended Complaint regarding whether the confirmation notice (Ohio Secretary of State Form 10-S)[5], used during the Supplemental Process, violates Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20507. Plaintiffs argue that the confirmation notice used by Ohio in the Supplemental Process is legally deficient. Defendant, on the other hand, argues that Plaintiffs' claim with respect to the confirmation notice are barred for three reasons: 1) Plaintiffs did not fulfill the NVRA's mandatory notice requirement; 2) waiver; and 3) estoppel. Additionally, Defendant and Amicus Public Interest Legal Foundation argue that laches bars Plaintiffs' claim or the relief sought. Alternatively, Defendant argues that Plaintiffs' second claim fails on the merits. The Court will address these arguments in turn.

### A. Defendant's Procedural and Jurisdictional Arguments

#### 1. *NVRA's Mandatory Notice Requirement*

Defendant argues that the NVRA requires Plaintiffs to provide Ohio with "an opportunity to attempt compliance before facing litigation" and failed to do so. *Assn. of Comm. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). Plaintiffs respond that they sent notice letters to Defendant more than 20 days prior to filing suit—all that was required of them since the alleged violation occurred within 120 days of a federal election. (Doc. 139, Pls.' Rep. at 1–2).

---

[5] The current version of the confirmation notice is Form No. 10-S-1 implemented in June 2018. (*See* Doc. 133-15). Prior versions of the confirmation notices were referred to as Form No. 10-S. (*See* Doc. 133-13, compilation of 2007 through 2015 confirmation notices). Prior to 2016, a single confirmation notice was used for both the NCOA and Supplemental Processes. Today, the Secretary of State uses two different confirmation notices. Form No. 10-S-2 is sent to individuals who move in-county and fill out a change of address form with the U.S. Postal Service. Form No. 10-S-1 is used for all other individuals receiving notices pursuant to the NCOA and Supplemental Processes. (Doc. 133-4, Damschroder Decl. ¶ 13).

The NVRA creates a private right of action for individuals whose rights under the statute are violated.  *See* 52 U.S.C. § 20510.  The NVRA, however, requires claimants to take certain steps before filing an action.  First, "a person who is aggrieved by a violation of this Act may provide written notice of the violation to the chief election official of the State involved."  *Id*., § 20510(b)(1).  Second, an aggrieved person must wait 90 days after the State officer's receipt of notice (or wait 20 days if the violation occurred within 120 days before an election for Federal office), and, if the violation is not corrected, the person may then bring a civil action in federal court for declaratory or injunctive relief with respect to the violation.  *Id*., § 20510(b)(2).  If, however, "the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2)."  *Id*., § 20510(b)(3); *see also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 713 (S.D. Miss. 2014).

Defendant acknowledges receipt of a letter dated December 17, 2015, from Plaintiffs' counsel on behalf of the Ohio A. Philip Randolph Institute.  In this letter, APRI notifies Ohio that the Supplemental Process violates Section 8(b) of the NVRA and specifically states, "[t]his letter serves as notice pursuant to 52 U.S.C. §20507."  (Doc. 133-8).  However, this letter did not request specific changes to the confirmation notice.  Then, on February 23, 2016, Plaintiffs' counsel, on behalf of the Northeast Ohio Coalition for the Homeless ("NEOCH"), sent another letter notifying the Secretary that "the confirmation notice that Ohio currently sends to voters under both the Supplemental Process and Ohio's National Change of Address ("NCOA") roll-maintenance process—referred to as SOS Form 10-S—does not comply with the requirements of Section 8(d)(2) of the NVRA."  (Doc. 133-6).  This letter was sent 43 days before Plaintiffs initiated this lawsuit on April 6, 2016.  (Doc. 1).  For his part, Plaintiff Larry Harmon failed to send any letter

or otherwise provide notice to Defendant that the confirmation notice was deficient, thereby depriving Defendant of the opportunity to remedy the alleged violations before facing litigation.

Defendant argues that Plaintiffs did not wait the required 90 days before initiating this lawsuit and they failed to inform the State what it needed to do to avoid a lawsuit. Additionally, Defendant asserts that "[a] warning letter cannot be 'too vague' such that the recipient does not have 'an opportunity to attempt compliance . . . before facing litigation.'" (Doc. 133, Def.'s Mot. at 5 (citing *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014))).

The Court is concerned with Plaintiffs' failure to provide adequate and detailed requests to remedy the confirmation notice in a timely manner. The purpose of the notice requirement is to afford the State an opportunity to cure the deficiency and/or remedy the alleged violation before court intervention becomes necessary. Notably, the State altered the form and content of the confirmation notice after Plaintiffs' filed the current lawsuit and fully articulated their grievances with the confirmation notice. The vague nature of Plaintiffs' pre-litigation notice—and Mr. Harmon's failure to provide any notice at all— potentially deprived Defendant of any meaningful notice of Plaintiff's specific alleged violations, and thus, the opportunity to attempt compliance prior to litigation.

However, Defendant is now, at the eleventh hour, raising this issue for the first time. Defendant has made much of the fact that Plaintiffs have been dilatory in seeking relief on their second claim, but the same is true of Defendant where he has failed to raise this standing issue prior to this stage of litigation. There is no question that Mr. Harmon failed to comply with the notice requirement and most likely lacks standing. Therefore, out of an abundance of caution, the Court will not dismiss Plaintiff Harmon or the other Plaintiffs' claims on this ground, but instead will address both parties' arguments on the merits.

### 2. *Waiver*

Defendant asserts that "Plaintiffs waited until losing at the U.S. Supreme Court to seek their dramatic theories for relief based on the format of the confirmation notice." (Doc. 133, Def.'s Mot. at 5). Defendant takes issue with Plaintiffs now seeking full reinstatement of removed voters and other relief, based on their second claim, which is the same relief they previously sought based on their primary, unsuccessful Supplemental-Process claim. Defendant argues that Plaintiffs initially only sought a revised confirmation notice that complies with the NVRA as the remedy for the second claim of their Amended Complaint. Based on these circumstances, Defendant argues that Plaintiffs have waived their right to pursue the relief they are now seeking for their second claim.

Waiver is "the voluntary relinquishment of a known right or conduct that warrants an inference of a relinquishment of that right." *Burlington Ins. Co. v. Eden Cryogenics LLC*, 126 F. Supp. 3d 947, 963 (S.D. Ohio 2015) (Sargus, C.J.). Defendant is correct that in Plaintiffs' Prayer for Relief, they sought injunctive relief "(c) directing the Defendant to adopt a new Form 10-S that complies with the requirements of the NVRA." (Doc. 37, Am. Compl. at 18). However, Plaintiffs did assert the following in their Second Cause of Action:

> 61. As a consequence of its legally deficient confirmation notice, which does not provide a date by which voters must return the form or information about how to re-register if a voter has moved outside of the county or state (despite the statute's clear requirements that this information be included), and which requires information that is not authorized by federal law, Defendant has violated and continues to violate Section 8 of the NVRA. 52 U.S.C.A. § 20507(d)(2).

> 62. The failure of the Defendant to comply with Section 8 of the NVRA has harmed Plaintiff Harmon, Organizational Plaintiffs' members, and has injured and will continue to injure the Organizational Plaintiffs because of the additional resources invested in voter registration and properly educating Ohioans who have not voted since 2008 that they have likely been purged. Remediation of these ongoing violations will permit the Organizational Plaintiffs to allocate their scarce resources

to their other important activities and will ensure their members are not disenfranchised pursuant to an unlawful roll-maintenance procedure.

63. Plaintiffs are aggrieved by the Defendant's past and continuing violations of the NVRA through its use of SOS Form 10-S and have no adequate remedy at law. Declaratory and injunctive relief is required to remedy past and continuing violations of the NVRA and to ensure the Defendant's future compliance with the NVRA.

(*Id*. at 16–17).

The Court acknowledges Defendant's arguments and agrees that in the extensive briefing on these issues, Plaintiffs' focus was on seeking reinstatement or securing the right to vote for those individuals removed from the voter registration rolls through the alleged unlawful operation of Ohio's Supplemental Process. However, Plaintiffs clearly pled the second cause of action, as set forth in its entirety above. This is not a case where the claim was not pled, but more a question of whether the relief now sought was previously requested.

Rule 54(c) of the Federal Rules of Civil Procedure instructs district courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). This rule affords district courts flexibility in crafting relief so that a plaintiff may recover on a valid claim, regardless of counsel's pleading errors. *See Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983). Therefore, Defendant received fair notice of Plaintiffs' claim and general theory of relief. Accordingly, Plaintiffs did not waive their right to pursue this claim.

### 3. *Equitable Estoppel*

Defendant next argues that equitable estoppel bars Plaintiffs' pursuit of their second cause of action. Equitable estoppel "precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct." *State ex rel. Cities Serv. v. Orteca*, 63 Ohio St. 2d 295, 299 (1980). Defendant contends

11

that "Plaintiffs never told Ohio that they would pursue their new theories of relief and Ohio relief on Plaintiffs' representations (and lack thereof)." (Doc. 133, Def.'s Mot. at 9).

Plaintiffs respond that they sought reinstatement of all voters purged under the Supplemental Process in their Prayer for Relief. Plaintiffs generally assert that they have been "unwavering and consistent with their articulated intention to seek this relief on the Notice Claim." (Doc. 139 at 3).

Although Plaintiffs' claim that the confirmation notice violates the NVRA is not a new claim and Plaintiffs have not sought to amend their Complaint, the crux of Defendant's argument is that the relief requested was not timely raised. In the Public Interest's Amicus brief, it summarizes, "[a]lthough APRI and NEOCH's challenge to Ohio's confirmation notice is not itself untimely, the relief requested is." (Doc. 135 at 5). The Court agrees that Plaintiffs' primary relief sought on the second cause of action was a revised confirmation notice and the current broad relief sought was primarily tied to the first claim, that the supplemental process violated the NVRA. However, Defendant was still on notice that Plaintiffs intended to pursue this claim. Further, Plaintiffs argue, and the Court agrees, that "Defendant's attempt to impose a heightened pleading standard requiring Plaintiffs to articulate which form of relief is sought for which cause of action, is unsupported by the Federal Rules and must be rejected." (Doc. 139 at 4). The second claim was not abandoned during the prior briefing and decisions issued in this case. Accordingly, equitable estoppel is not applicable to this case.

### 4. *Laches and other Procedural Arguments*

Defendant and Amicus Public Interest argue that laches bars Plaintiffs' pursuit of their second cause of action and the specific relief requested. "Laches is a negligent and unintentional failure to protect one's rights . . .." *Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894

(6th Cir. 1991). "[L]aches is not . . . a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced.'" *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). Laches bars a claim when "(1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay." *ACLU of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004).

Defendant states that "Plaintiffs litigated for well over two years before raising their new legal theories, to Ohio's prejudice." (Doc. 133 at 19). And Amicus Public Interest states that "[w]aiting over two years to bring this claim and requested relief certainly justifies this Court refusing to grant the requested relief." (Doc. 137 at 6). Plaintiffs respond that "Defendant has known from the start exactly what relief Plaintiffs were seeking, and his assumptions about which cause of action would support that relief are irrelevant when Plaintiffs have shown they are entitled to the relief based on the Notice Claim." (Doc. 139 at 5, n. 5).

This Court recognizes that the extreme relief sought by Plaintiffs on their only remaining claim could potentially be viewed as an end run around the Supreme Court's decision and a final attempt to have the previously removed voters reinstated. However, as set forth above with respect to Defendant's other procedural arguments, Plaintiffs did sufficiently pursue the second cause of action and did not abandon it throughout the course of this litigation. Therefore, laches is not applicable to this case.

Defendant also references several equitable and public interest considerations as a basis for denying Plaintiffs' new claim for relief. Defendant asserts that "the Eleventh Amendment bars Plaintiffs' claims because Plaintiffs do not claim any ongoing violation. *Green v. Mansour*, 474 U.S. 64, 73 (1985) ("There is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction.")." (Doc. 133 at 20). Further, Defendant states that "under the

canon of constitutional avoidance, courts interpret statues so as to avoid constitutional questions. *Davet v. Cleveland*, 456 F.3d 549, 554–55 (6th Cir. 2006)." (*Id.*). And finally, "federalism weighs heavily against Plaintiffs' claims. *See Ohio Democratic Party v. Husted*, 834 F.3d at 622 (federal courts should not "become entangled, as overseers and micromanagers, in the minutiae of state election processes without careful consideration.")." (*Id.*).

The Court agrees that Plaintiffs are not claiming an ongoing violation at this time, however, at the time they filed the Amended Complaint and when the Sixth Circuit issued its decision, there was still an ongoing violation with respect to the confirmation notice. This Court previously found that prior revisions to the confirmation notice by Secretary Husted mooted Plaintiffs' claims on this issue, but the Sixth Circuit disagreed. *A. Phillip Randolph Inst.*, 838 F.3d at 715 (finding that "the district court erred by holding that Plaintiffs' claims regarding Ohio's confirmation notice are moot"). Therefore, due to the pendency of this case for over two years and the important nature of this case, the Court believes a decision on the merits is warranted.

**B.      Merits of Plaintiffs' Second Claim**

   **1.      Ohio's Confirmation Notice**

Plaintiffs argue that since the Supplemental Process was implemented in Ohio in 1994, the confirmation notice sent as part of this process violated Section 8 of the NVRA in three ways: (1) the confirmation notice did not notify voters of the deadline to respond to avoid adverse consequences to their registration status; (2) the confirmation notice failed to inform voters of the consequences of failing to respond; and (3) the confirmation notice did not provide information on how a voter registered in Ohio could remain eligible to vote if the person moved to another state. (Doc. 132, Pls.' Mot. at 2–3). In addition to Plaintiffs' enumerated arguments, they assert that the more recent confirmation notices were flawed in a fourth way, "[t]hey required recipients to fill out the same "five fields" of information—name, address, dare [sic] of birth, proof of identify, and

14

signature under penalty of perjury—required on the Ohio voter registration form." (*Id*. at 3).

Defendant argues that the confirmation notices sent by the Secretary complied with the NVRA.

The Court will consider the merits arguments in turn.

The NVRA, 52 U.S.C. § 20507, titled "Requirements with respect to administration of

voter registration," specifically provides:

> **(b)** Confirmation of voter registration. Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office--
>> **(1)** shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (*42 U.S.C. 1973* et seq. [*52 USCS §§ 10301* et seq.]); and
>> **(2)** shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote, except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual--
>>> **(A)** has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then
>>> **(B)** has not has not voted or appeared to vote in 2 or more consecutive general elections for Federal office.
>
> **(c)** Voter removal programs.
>> **(1)** A State may meet the requirement of subsection (a)(4) by establishing a program under which--
>>> **(A)** change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and
>>> **(B)** if it appears from information provided by the Postal Service that--
>>>> **(i)** a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or
>>>> **(ii)** the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the

notice procedure described in subsection (d)(2) to confirm the change of address.

**(2)** (A) A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.

> **(B)** Subparagraph (A) shall not be construed to preclude--
>> **(i)** the removal of names from official lists of voters on a basis described in paragraph (3)(A) or (B) or (4)(A) of subsection (a); or
>> **(ii)** correction of registration records pursuant to this Act.

**(d)** Removal of names from voting rolls.

> **(1)** A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant--
>> **(A)** confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or
>> **(B)**
>>> **(i)** has failed to respond to a notice described in paragraph (2); and
>>> **(ii)** has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

> **(2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:**
>> **(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.**

> **(B)** If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.
>
> **(3)** A voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection.

52 U.S.C. § 20507(b)–(d) (emphasis added).

The parties acknowledge that the format and content of the confirmation notice has changed since its inception in 1994. The form is maintained and edited by the Ohio Secretary of State and then distributed to the county boards of elections via a Directive from the Secretary of State. The forms at issue in this case are referenced on the docket as SOS Form 10-S. (*See* Doc. 42-16 (07/07 version); Doc. 42-15 (04/11 version); Doc. 42-14 (05/13 version); and Doc. 42-13 (03/15 version)).

Plaintiffs assert that none of the prior Forms 10-S complied with the NVRA until the most recent confirmation notice issued by the Secretary of State as Form No. 10-S-1 in June of 2018. (*See* Doc. 132-5). The significant change in the most recent form is the inclusion of the information of how to register to vote in another state, remedying the deficiency specifically cited by the Sixth Circuit. Prior to the June 2018 revision, the July 2016 version of the confirmation notice corrected all of Plaintiffs' challenges with the exception of the moving-out-of-state issue. (*See* Doc. 56-2; *see also* Doc. 66, June 29, 2016 Opinion and Order).

### a. Deadline to Return Confirmation Notice

Turning first to Plaintiffs' argument that the confirmation notice didn't notify voters of the deadline to respond to the confirmation notice to avoid removal from the voter registration rolls. Plaintiffs argue that the confirmation notice must say that it must be returned 30 days before Election Day. The prior versions of the confirmation notice instructed voters to take immediate

action and did not include a specific return date.  Plaintiffs argue that this language is vague and misleading.  This Court disagrees.  Defendant argues, and the Court agrees, that the word "should" in the NVRA gives states flexibility.

The relevant language of 52 U.S.C. §20507(d)(2)(A) states that "the registrant ***should*** return the card not later than the time provided for mail registration under subsection (a)(1)(B)." If the voters in receipt of the confirmation notice took immediate action, i.e., promptly returning the confirmation notice, then there would be no risk of removal as a registered voter.

Further, a voter's failure to return the card 30 days before Election Day does not trigger any action by the Secretary.  The individual remains a registered voter but is marked as "inactive" in the voter registration database pursuant to Ohio's Supplemental Process.  (Doc. 38-2, Damschroder Decl., ¶ 20).  Although designated as "inactive," the individual has all the rights of an otherwise active voter, including the ability to cast a regular ballot in any election.  (*Id*.).  If, however, after four years (including two federal general elections) and no voter activity, then the individual will be removed from the list of eligible voters.  (*Id*.).  Therefore, the date of 30 days before Election Day is not a necessary element, but rather the statute suggests the confirmation notice ***should*** be returned by that date.[6]  Accordingly, the Court does not find that the prior versions

---

[6]  If the individual returns the confirmation notice at any time, even after the 30 days prior to the election time frame, he/she will be returned to active status.  Further, Secretary Husted has issued a number of directives to help voters who may not have returned the confirmation notice and facing cancellation to be returned to active status and remain on the voter registration rolls.  "Directive 2018-21 explains a new automatic process to ensure that when a Ohioan renews his or her driver's license or state identification card through the Bureau of Motor Vehicles ("BMV") and provides the same address as the one included in his or her voter registration that it will serve as confirmation of the individual's address for list maintenance purposes and the individual will have his or her status moved from 'active-confirmation' to 'active-active'." "Directive 2018-22 instructs board to mail an additional notice 30 to 45 days prior to cancellation to any voters impacted.  This last-chance mailer is intended to encourage individuals to respond and to remain active voters."  And Directive 2018-21-02 extends 2018-21 "to also apply retroactively to individuals who have appeared at the BMV since January 1, 2011.  Together with Directive 2018-21, Directive 2018-21-02 will re-set to active status all or nearly all still-eligible voters in the pipeline for removal based on inactivity."  (Doc. 133-4, Damschroder Decl. ¶ 7(xxiii)).

of the confirmation notice stating that the voter should take immediate action to be in violation of the NVRA.

### b.     Consequence of Failure to Return Confirmation Notice

Plaintiffs' next challenge to the confirmation notice is that it did not inform voters of the consequence of failing to respond.  Plaintiffs assert that the confirmation notice inaccurately stated that "your voter registration in Ohio may be cancelled pursuant to federal and state law" (Docs. 42-13 and 42-14); "your name may be removed from the voter registration list." (Docs. 42-15 and 42-16).  Plaintiffs argue that pursuant to Ohio's Supplemental Process and the Secretary of State's Directives (2011–2015), that they **will** be removed.  However, Plaintiffs fail to provide any argument as to how this a violation of the NVRA.  The language of the NVRA does not require that this language be included in the confirmation notice.  In fact, the language of the statute itself is not as strong as Plaintiffs argue it should be, stating that the "registrant should return the card." Whether the confirmation notice stated "may be removed" versus "will be removed," it still provided sufficient notice to voters that if they wanted to remain as an active voter, they should return the confirmation notice.

Plaintiffs also contend that the "Sixth Circuit found that the Forms Ohio sent prior to 2016 'did not adequately inform voters of the consequences of failing to respond to the notice,' because the notices stated only that a failure to respond or vote in the subsequent four-year period '*may*' result in removal from the voter rolls."  (Doc. 132 at 8 (*APRI*, 838 F.3d at 703)).  Plaintiffs further summarize that, "[t]he Sixth Circuit held that Plaintiffs' Notice Claim was not moot because correcting the notice prospectively did not remedy the harm to voters who had already been purged using a notice which, for the reasons the court had explained in the background, was 'blatantly non-compliant with the NVRA.'"  (Doc. 139 at 6 (quoting *APRI*, 838 F.3d at 714)).  Defendant

counters that Plaintiffs are incorrect in arguing that the Sixth Circuit decided this issue. (Doc. 133 at 11). The Court agrees with Defendant. The aforementioned quoted section was pulled from the Background section of the *APRI* decision and the Sixth Circuit never included any further discussion on the merits of this issue. *See Core Communs. v. Verizon Md.*, No. 1:02-cv-3180-JFM, 2012 U.S. Dist. LEXIS 112763, *15 (D. Md. Aug. 10, 2012) ("a firmly established principle of judicial review" is that "statements in the background section of an appellate opinion hold no determinative weight"). Accordingly, the Court does not find that the previous versions of the confirmation notice violated the NVRA on this basis.

Plaintiffs generally assert that many voters were removed from the voter registration rolls pursuant to these allegedly defective forms and even more are scheduled to be removed who received defective forms dating back to 2013. Plaintiffs state that these voters "remained perfectly eligible to vote at the same address or in the same county where they had been registered." (Doc. 132, Pls.' Mot. at 4). But Plaintiffs have not alleged that these voters would not have been removed and actually would have returned the confirmation notice if the notice had contained the above information. The fact is, these voters were mailed a confirmation notice and failed to return that card or otherwise take any action for four years thereafter and accordingly were lawfully removed pursuant to Ohio's Supplemental Process.

### c. Moving to Another State

Plaintiffs continue to argue that the older versions of the confirmation notice failed to provide voters with information on how a "voter registered in Ohio could remain eligible to vote if the person moved to another state." (Doc. 132, Pls.' Mot. at 3). The NVRA requires: "If the registrant has changed residence to a place outside the registrar's jurisdiction in which the

20

registrant is registered, information concerning how the registrant can continue to be eligible to vote." 52 U.S.C. §20507(d)(2)(B).

This Court is faced with the difficult task of evaluating this issue when the United States Supreme Court upheld Ohio's Supplemental Process as a whole, as set forth in subsection (d) of the NVRA. The Supreme Court held that "Ohio's Supplemental Process follows subsection (d) to the letter." *Husted v. A. Philip Randolph Institute*, 138 S. Ct. at 1848. Yet, this Court must balance that decision with the United States Court of Appeals for the Sixth Circuit's more pointed decision on the confirmation notice issue. The Sixth Circuit held that the NVRA requires notifying residents who have moved out of state how they can continue to be registered to vote. Judge Siler in his opinion concurring in part and dissenting in part stated, "[a]lthough I agree with the district court that the State officials have been given an 'onerous burden of coaching out-of-state residents through the registration process in their new States of residence,' this is what the statute requires." *APRI*, 838 F.3d at 717.

Following the Sixth Circuit decision, Secretary Husted added language to the current version of the confirmation notice about continuing to be eligible to vote if moving out of state. The Form 10-S-1 specifically states: "To find information on how to register to vote in another state, visit the U.S. Election Assistance Commission's Website: www.eac.gov/voter_resources/register_to_vote.aspx."

Defendant argues that this issue has been decided and is "over"—"Plaintiffs do not have standing to plead on behalf of foreign residents and all of Plaintiffs' newly-alleged theories for remedies relate to voting or reinstatement in Ohio; voters who have moved elsewhere logically are not included and would be ineligible for the 'expanded' *APRI* Exception or reinstatement." (Doc. 133 at 12).

Based on the plain language of the NVRA and the holding of the Sixth Circuit in *APRI*, the Defendant (the current Secretary of State and future office holders) is required to advise voters who have moved out of state how they can continue to be eligible to vote.  The Court finds the current version of Form 10-S-1 complies with this requirement and Plaintiffs agree.  Therefore, Defendant is hereby ordered to continue to use a version of the confirmation notice that is substantially similar to the current confirmation notice by continuing to inform voters how they can continue to be eligible to vote even when moving out of state.

### d.      Completing Certain Fields of Information on Confirmation Notice

In addition to the three enumerated arguments as to how the confirmation notice violates the NVRA, Plaintiffs raise one final issue with the confirmation notice—"they required recipients to fill out the same 'five fields' of information—name, address, dare [sic] of birth, proof of identity, and signature under penalty of perjury—required on the Ohio voter registration form."  (Doc. 132 at 3).  Plaintiffs take issue with requiring a registered voter to essentially re-register to remain on the voter registration rolls.

Defendant counters that "Plaintiffs' own argument spotlights the trivial nature of the protests."  (Doc. 133 at 12).  Plaintiffs argue against the completion of the five fields of information here, but demand it to comply with the requirement of Section 8(d)(2) of the NVRA.  (*See* Doc. 132, Pls.'s Mot. at 8 ("the Forms employed to begin the removal process must contain the information and meet the other requirements set forth Section 8(d)(2)")).

Section 8(d)(2) of the NVRA requires the voter to "state his or her current address" on the confirmation notice.  52 U.S.C. § 20507(d)(2).  Defendant asserts, and the Court agrees, that the NVRA "does not prescribe the precise language a State must use in its confirmation card."  (Doc. 133 at 13).  There is nothing in the NVRA that requires the additional information, nor anything

that bars requiring the additional information.  Defendant references the Federal Election Commission publication "Implementing the National Voter Registration Act of 1993 Requirements, Issues, Approaches, and Examples" (hereinafter the "FEC Guide") (Doc. 133-12). In the FEC Guide, it recommends that states may want to consider "adopting a single, all-purpose confirmation return notice containing" full name, date of birth, identification number (optional), telephone number (optional), address, recognizing that the confirmation notice needs to address individuals residing at the same address, those who may have moved within the same jurisdiction, and those who may have moved out of state.  (*Id*. at 27–31).  Further, Defendant asserts that confirmation notices are not rejected if the information requested is not completed in full.  (*See* Doc. 133 at 13, referencing Directive 2013-20; Wolfe Decl. ¶¶ 5–6 (stating that the office has never instructed boards to view an incomplete confirmation notice as reason to cancel a voter's registration or place the registration on the track for cancellation; and Herron, Shubat Decl. and Poland Decl. at ¶¶ 5–7, ¶¶ 3–5 and ¶¶ 3–5 respectively stating that cards are not rejected if identification is absent)).

Therefore, based on the plain language of the NVRA, the Court finds that there has been no violation in requiring these fields of information on previous versions of the confirmation notice.  Further, there is no harm to voters if the information is not provided in its entirety.

## C.    Permanent Injunction Factors

Plaintiffs have demonstrated one minor violation of the NVRA, however, they have failed to substantially demonstrate that they suffered an irreparable injury.  Defendant argues that "Plaintiffs did not adduce evidence of *even one single person* who failed to return Ohio's confirmation notice or otherwise engage in voter activity based on the format of the notice." (Doc. 133 at 18).  Defendant continues that "all of Plaintiffs' declarants who discussed the notice did not

remember ever receiving the notice." (*Id*. at 18–19, citing Doc. 9-4, Harmon Decl. ¶ 10; Doc. 9-6, Keil Decl. ¶ 8; Doc. 9-5 McCullough Decl. ¶ 10).

Additionally, there is no ongoing violation of the NVRA and therefore no harm to others. The only problem identified in this case with respect to the confirmation notice was the failure of the Secretary to inform voters how they can continue to be eligible to vote when they have moved or are moving out of state.  These voters who have moved out of state would not be eligible for any of the relief Plaintiffs are seeking, whether it be an extension of the *APRI* Exception or reinstatement.  Therefore, as long as the Secretary continues to send a version of the confirmation notice that is substantially similar to the current version and continues to comply with the requirements of the NVRA, there is no harm to others.

Finally, the Court finds that the public interest is being served by Ohio's voter maintenance procedures and will continue to be served as long as Ohio continues to operate in compliance with the NVRA.

### D.    Remedy/Damages

Plaintiffs have prevailed on one issue related to their second cause of action—failure to inform voters who have moved out of state how to continue to be eligible to vote.  The remedy, therefore, must be limited to address just that violation, i.e., it must be proportional to the harm. With respect to this violation, Plaintiffs have not shown any individuals who received the confirmation notice, were confused by it, and therefore didn't send it in.  All of the relief requested by Plaintiffs pertains to eligible Ohio voters who may have been wrongfully removed from the voter registration lists.  However, there is no evidence that any current Ohio residents have been harmed by this minor violation.  Only voters who have moved out of state are subject to this

violation and voters who have moved out of state would not be eligible for reinstatement to Ohio's voter registration rolls.

It is important to acknowledge that Ohio is a leader in making voting accessible to its residents.  The Sixth Circuit has held that "[t]he undisputed factual record shows that it's easy to vote in Ohio.  Very easy actually." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 628 (6th Cir. 2016).  Ohio provides twenty-two days of early in-person voting and no-excuse absentee voting by mail.  *See* Ohio Rev. Code §3509; Doc. 133-4, Damschroder Decl. ¶ 7.  Ohio also sends out absentee ballot applications to registered voters.  (*Id*. at ¶7).

Additionally, with respect to registration, in 2012, Secretary Husted introduced an online option for voters to change their address.  "As of September 2018, more than 552,000 Ohioans have taken advantage of this change of address tool."  (*Id*.).  In 2016, Secretary Husted partnered with the Electronic Registration Information Center ("ERIC"), a national, non-profit organization with twenty-five member states whose mission is to "improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens."  *See* https://www.ericstates.org.  As part of this partnership, in 2016, Secretary Husted sent registration notices to more than 1.6 million eligible but unregistered Ohioans, including individuals who may have had their voter registration cancelled pursuant to the NCOA and/or Supplemental Process.  (*Id*.).  And in 2018, notices were sent to 319,000 eligible but unregistered Ohio residents.  (*Id*.).  Additionally, Secretary Husted issued Directive 2018-21 implementing a new automatic process to ensure that when an Ohioan renews his or her driver's license or state identification card through the Bureau of Motor Vehicles and provides the same address as the one included in his or her voter registration, that it will serve as confirmation of the individual's address for list maintenance purposes and the individual, if in confirmation status, will be moved to active status.  Finally, the

Secretary in Directive 2018-22 instructs the boards of elections to mail a final notice 30 to 45 days prior to cancellation to any voters impacted.  In short, the Court recognizes that the Secretary has taken several proactive measures since this litigation has commenced and those measures, coupled with the efforts of organizational Plaintiffs and other voter advocacy groups, are in no small part responsible for nearly 65,000 registered voters in active confirmation status being moved to active in the last month alone.  (*Id.*).

With respect to this specific deficiency in the confirmation notice, the Ohio Secretary of State is hereby **ORDERED** to continue to use the current version of the confirmation notice, Form 10-S-1, or one that is substantially similar, that specifically includes information on how a voter moving out of state can continue to be eligible to vote.  Sending a revised confirmation notice to those who have been removed would not be efficient with respect to this deficiency in the confirmation notice because the affected individuals are no longer Ohio residents.  The Court does find that the Secretary could add additional information to the Ohio Secretary of State's webpage on how voters in Ohio can continue to be eligible to vote when moving out of state.  Specifically, on the following webpages: https://olvr.sos.state.oh.us/ and https://olvr.sos.state.oh.us/NCOA/NCOA, there are sections titled "HAVE YOU MOVED OUT OF OHIO?" where the following language should be added:  To find information on how to register to vote in another state, visit the U.S. Election Assistance Commission's website: www.eac.gov/voter_resources/register_to_vote.aspx.

Defendant is hereby ordered to complete the aforementioned remedy on or before November 1, 2018.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Final Judgment is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion for Final Judgment is **GRANTED IN PART AND DENIED IN PART**.

Final judgment shall be entered in favor of Defendant on all but one issue—the requirements to inform voters who have moved out of state how to continue to be eligible to vote.

The Clerk of this Court shall remove Documents 132 and 133 from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

_/s/ George C. Smith_
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**